UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BOBBY L. BEASLEY,

    Plaintiff

v.                                     CIVIL ACTION NO. 2:04-0505

MAYFLOWER VEHICLE SYSTEMS, INC.,

    Defendant

## MEMORANDUM OPINION AND ORDER

Pending is defendant's motion for judgment as a matter of law filed January 6, 2006.

I.

On April 7, 2004, plaintiff instituted this action. On May 21, 2004, defendant removed. On December 19 through 22, 2005, the case was tried to a jury. Plaintiff alleged two claims, namely, that he was targeted for unlawful retaliation and termination (1) after he filed a workers' compensation claim, and (2) as a result of a favorable settlement he achieved previously against the defendant in a deliberate-intention action ("intentional tort lawsuit").[1]

---

[1]On December 28, 1999, plaintiff was involved in a workplace
                                                                                                                           (continued...)

The jury found for the defendant as to the workers' compensation retaliation claim. Plaintiff prevailed on his claim that he was terminated as a result of the intentional tort lawsuit. The jury awarded plaintiff $100,000 for lost wages and benefits and an additional sum of $30,000 for "humiliation, embarrassment, emotional distress, and loss of personal dignity." (Verd. frm. at 2). Punitive damages were awarded in the sum of $35,000. Defendant now requests the court reverse the jury verdict and enter judgment as a matter of law in its favor.

II.

A. Governing Standard

Federal Rule of Civil Procedure 50, subdivisions (a) and (b), provide pertinently as follows:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no

---

[1](...continued)
mishap. He suffered severe injuries and subsequently sought worker's compensation benefits. He later instituted an action under West Virginia's deliberate-intention statute, West Virginia Code section 23-4-2(d)(2).

2

> legally sufficient evidentiary basis for a
> reasonable jury to find for that party on
> that issue, the court may determine the issue
> against that party and may grant a motion for
> judgment as a matter of law against that
> party with respect to a claim or defense that
> cannot under the controlling law be
> maintained or defeated without a favorable
> finding on that issue.
>
> . . . .
>
> (b) Renewing Motion for Judgment After Trial;
>     Alternative Motion for New Trial. If, for any
>     reason, the court does not grant a motion for
>     judgment as a matter of law made at the close
>     of all the evidence, the court is considered
>     to have submitted the action to the jury
>     subject to the court's later deciding the
>     legal questions raised by the motion. The
>     movant may renew its request for judgment as
>     a matter of law by filing a motion no later
>     than 10 days after entry of judgment . . . .

Fed. R. Civ. P. 50(a) and (b).

When a defendant moves for judgment as a matter of law after a jury finding adverse to it, the court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in that prevailing party's favor. Ferguson v. City of Charleston, 308 F.3d 380, 394 (4th Cir. 2002); Austin v. Torrington Co., 810 F.2d 416, 420 (4th Cir. 1987). There is no occasion to weigh the evidence or assess credibility. Ferguson, 308 F.3d at 394; Sales v. Grant, 158 F.3d 768, 775 (4th Cir. 1998). The operative question is whether the jury,

examining the evidence in the most favorable light to the non-movant, could properly have reached its findings. Ferguson, 308 F.3d at 394; Benesh v. Amphenol Corp., 52 F.3d 499, 502 (4th Cir. 1995). The verdict is subject to vacatur only if "there can be but one reasonable conclusion as to the verdict," a conclusion adverse to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If reasonable minds may differ on the point, the verdict stands. See Sales, 158 F.3d at 775.

B. The Court's Instructions

Following the parties' closing arguments, the court delivered the following instructions:

> The plaintiff, Bobby Beasley, was an at-will employee of Mayflower. As such, Mr. Beasley had no contract of employment with Mayflower and had no seniority rights whatsoever.
>
> The defendant may legally terminate the plaintiff for any reason at all, even an unfair one, as long as it was not motivated . . . by his . . . filing and prosecution of his intentional tort claim or lawsuit against the defendant.
>
> This is so because the rule that an employer has an absolute right to discharge an employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by his discharge.

4

The laws of the State of West Virginia prohibit an employer from retaliating against an employee . . . [for engaging] in protected activity such as filing a deliberate intention lawsuit against his employer.

. . . .

Now . . . it is illegal for an employer to terminate an employee for engaging in what the law recognizes as protected activity. West Virginia law establishes a substantial public policy which prohibits employers from retaliating against their employees for filing an intentional tort lawsuit against the employer.

It is illegal for Mayflower to retaliate against a person for filing such a lawsuit. In order to prove his case on this claim, Mr. Beasley must prove:

> (1) That Mr. Beasley engaged in protected activity;
>
> (2) That the defendant was aware of the protected activity;
>
> (3) That Mr. Beasley was retaliated against thereafter; and
>
> (4) That the retaliation followed Mr. Beasley's protected activity and occurred within a time frame that could create a reasonable inference that the retaliation was motivated by the protected activity, or that there is some other reason to believe that the termination was retaliatory.

The plaintiff bears the burden of proving by a preponderance of the evidence that retaliation for filing . . . the intentional tort lawsuit was a motivating factor in the defendant's decision to terminate the plaintiff.

It is not necessary for the plaintiff to prove that his termination by Mayflower was solely due to retaliation for filing . . . the intentional tort

5

lawsuit. The law recognizes that in some cases an employer may have mixed motive for making an employment decision. In a mixed motive case, there is no one true motive behind a decision. Instead, the decision is a result of multiple factors, at least one of which is illegal.

In a mixed motive case, the plaintiff must prove by a preponderance of the evidence that . . . his . . . intentional tort lawsuit was a motivating factor in the defendant's decision to terminate his employment. If the plaintiff does so, then the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision even in the absence of any such illegal motive.

. . . .

If you find that the plaintiff has failed in his burden to prove that the person who made the decision to discharge him was aware of the plaintiff's protected activity, you may find in favor of the defendant.

Employers are entitled to make business decisions as they see fit, even if those decisions appear to be unfair, so long as they are not motivated by discrimination or unlawful retaliation.

(Trans. at 546 to 550, 551).


C.  Analysis

      Defendant contends it is entitled to judgment as a matter of law for two reasons. First, it contends plaintiff presented no direct evidence that the decision maker responsible for plaintiff's termination, Mike Fell, knew about plaintiff's intentional tort lawsuit, thus negating any inference of

6

retaliation. Second, and dovetailing somewhat with the first contention, defendant asserts plaintiff offered no evidence from which the jury could properly infer he was terminated as a result of his protected activity.

Regarding the first argument, the jury was instructed that it was plaintiff's burden to prove that the discharge decision maker had an awareness of plaintiff's prior intentional tort lawsuit. Although defendant suggests plaintiff must make this showing by direct evidence, the law is to the contrary. In Page v. Columbia Natural Resources, Inc., 198 W. Va. 378, 480 S.E.2d 817 (1996), a legal secretary alleged her employer terminated her in violation of substantial public policy as a result of deposition testimony she gave in a staff attorney's wrongful discharge lawsuit against their mutual employer. The West Virginia Court observed as follows:

> While the question of whether Mrs. Page was terminated in retaliation for her testimony is not strikingly obvious from the record in this case, <u>we observe that employers rarely discriminate openly</u>. . . . [W]e cannot say that there was insufficient proof upon which the jury could base its verdict. <u>Moreover, we note that the jury had the benefit of observing the testimony and determining the credibility of the evidence presented on behalf of both parties</u>.

Id. at 388, 480 S.E.2d at 827 (emphasis supplied). With specific reference to the mixed-motive standard, Justice Albright, quoting

7

Justice Cleckley's seminal opinion in <u>Skaggs v. Elk Run Coal Co., Inc.</u>, 198 W.Va. 51, 76, 479 S.E.2d 561, 586 (1996), noted the prior, explicit rejection of a direct-evidence standard:

> We also emphatically reject the position that the burden shifts only when the plaintiff has established illicit motive through direct evidence, and we do so for several reasons. First, whether the plaintiff's proof is by direct or circumstantial evidence, or both, has nothing to do with the strength of her case; rather, the plaintiff's ability to produce direct evidence is completely accidental. Second, neither form of proof is necessarily more reliable than the other. Circumstantial evidence can be powerful, and direct evidence limp, and vice versa. Third, the direct-circumstantial distinction overlooks what the jury's role is in disparate treatment cases. <u>Essentially the jury is charged with the duty of recreating what in fact happened and whether the facts that did happen included intentional discrimination . . . . Thus, if the jury reads the facts and concludes that the employee has proved that a discriminatory motive entered into the employer's decision, it should not matter whether that conclusion was induced by direct or circumstantial evidence</u>. Fourth, we are not convinced that the direct-circumstantial distinction is a viable or meaningful one. Obviously, several of the federal circuits have had a great deal of difficulty with it, and there are substantial authorities who conclude that there is no such thing as direct evidence "that involves neither a logical nor an inferential process."

<u>Id.</u> at 390, 480 S.E.2d at 829 n. 11 (emphasis supplied) (quoting <u>Skaggs v. Elk Run Coal Co., Inc.</u>, 198 W.Va. 51, 76, 479 S.E.2d 561, 586 (1996)).

With these governing principles in mind, defendant's arguments merge somewhat. The question essentially becomes

8

whether plaintiff presented proof by a preponderance of the evidence that prohibited retaliation was a motivating factor in his termination. Further, in addition to the mixed-motive instruction, plaintiff was required to prove the following elements of his claim by a preponderance of the evidence: (1) that he engaged in protected activity; (2) that the defendant, through its decision maker Fell, was aware of the protected activity; (3) that plaintiff was retaliated against thereafter; and (4) that the retaliation followed his protected activity and occurred within a time frame that could create a reasonable inference that the retaliation was motivated by the protected activity or that there is some other reason to believe that the termination was retaliatory.

In resolving both of defendant's arguments, the inquiry centers on the second and fourth elements. As noted, defendants' two arguments are that (1) Fell lacked knowledge of the intentional tort lawsuit, and (2) that plaintiff offered no evidence from which the jury could properly infer he was terminated as a result of his protected activity.

In support of both arguments, and to negate proof under the second and fourth elements above, defendant first contends the filing of the intentional tort lawsuit was too remote in time

9

from plaintiff's termination for purposes of drawing the necessary inference. When first offered a salaried position in February or March of 2002 by Haughian, plaintiff testified that he told Haughian that he did not want to give up his hourly job protected by a union contract to take such a position with the defendant because he had just settled his intentional tort lawsuit against defendant in September 2001. (Trans. at 373, 374). Beasley's reluctance was perhaps due, in part, to the admonition of Lloyd McVay, a group leader or area manager at the time who was part of management at the plant:

> I went to Lloyd McVay, as he mentioned here today. He mentioned earlier that I did come to him. I questioned him as to whether or not I should take the salary job. Lloyd McVay told me I would be crazier than hell to take that job. I asked him why. He said due to the fact that I had a lawsuit against the plant and I should not take it. Because, like I said earlier, I would be going from a union workforce to a salary employee, so he thought that they would fire me. Lloyd is not the only one that mentioned that.

(Id. at 416). McVay later participated in plaintiff's exit interview. (Id. at 146, 174-75, 350-51)

Haughian persisted, however, attempting to convince plaintiff "[s]everal" times that he should take the salaried position. (Id. at 374). Following Haughian's repeated offers, plaintiff accepted the job in August 2002. (Id. at 396). Plaintiff was fired just eight months later in April 2003. (Id.

10

at 445). The jury could have reasonably inferred that this rather telling time line was sufficient proof for purposes of the fourth element; that is, that the claimed retaliation occurred within a time frame that created a reasonable inference that the retaliation was motivated by the intentional tort lawsuit in which a settlement was obtained.

Consideration of plaintiff's proof on the second element once again brings to the fore the circumstantial evidence of knowledge, if any, that Fell had concerning plaintiff's prior intentional tort lawsuit. One of the key issues at trial was whether Fell, prior to making the termination decision, knew of the prior protected acts by plaintiff. According to John Haughian, the plant general manager, plaintiff's termination was discussed during a meeting at the plant between Fell, who was the defendant's human resources manager, Haughian, and Jana Dawson, the plant personnel manager. Dawson, Haughian, and Fell were questioned at trial concerning whether plaintiff's intentional tort lawsuit was discussed with Fell or entered at all into the decision making process. (See trans. at 137-39, 169, 188, 215-16, 258-259, 260). The following excerpt from the cross examination of Dawson is illustrative of their response:

> Q. Ms. Dawson, I want you to look this jury in the eye and answer this question. Did the fact that Mr.

11

>Beasley had . . . filed a lawsuit, did that have anything to do with your decision, your opinion that he should have been fired?
>
>A. No . . . .

(Id. at 215-16). The issue was also argued at length during closing arguments. (Id. at 518-20, 529-31, 534 (defense counsel stating during closing argument that "[t]o believe the plaintiff's case, you have to believe, number one, that Mike Fell committed perjury.")).

The jury rendered its finding on this issue in plaintiff's favor. That critical finding may only be undone after one (1) views the evidence in the light most favorable to plaintiff, and (2) draws all reasonable inferences in his favor, without regard to the weight of the evidence or assessments of credibility. In view of that rather demanding standard, the court would usurp the jury's function if it reversed the verdict.

The jury was instructed as to the necessity of finding that Fell had knowledge of plaintiff's prior intentional tort lawsuit and that those considerations played a motivating factor in his discharge. The evidence on the point was, inter alia, the unqualified denials of Fell, Dawson, and Haughian that the intentional tort lawsuit entered into the termination decision. The jurors rejected those denials for reasons reserved unto

12

themselves. Perhaps they were convinced it was implausible that such an attention-grabbing lawsuit, in which plaintiff obtained a settlement, never came up when plaintiff's work history was discussed by the three officials. One of those three, the plant general manager, had urged the plaintiff to shift to the at-will position for several months before the plaintiff succumbed to his entreaties notwithstanding the advice of another member of the management team who told plaintiff he would be "crazier than hell" to make the switch. In any event, reasonable minds confronted with the inquiry might differ on whom to believe and the jury was entitled, if it saw fit, to discredit the testimony of each of those three officials on what Fell knew and rely on reasonable inferences arising from the other evidence in the case.[2]

---

[2]The elements formulated by the court in its instructions, as previously set forth, emanate from syllabus point 6 of <u>Conrad v. ARA Szabo</u>, 198 W. Va. 362, 480 S.E.2d 801 (1996):

> "'"In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, W. Va.Code, 5-11-1, et seq., as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) <u>that complainant's discharge followed his or her protected activities within such period of time that</u>
> (continued...)

13

Consequently, defendant has failed to demonstrate, examining the evidence in the light most favorable to the plaintiff, that the jury could not properly have reached its findings for plaintiff on the critical issues of Fell's knowledge and retaliatory motive.

The court, accordingly, ORDERS that defendant's motion for judgment as a matter of law be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: July 20, 2006

John T. Copenhaver, Jr.
United States District Judge

---

[2](...continued)
the court can infer retaliatory motivation." Syl. pt. 4, Frank's Shoe Store v. West Virginia Human Rights Commission, 179 W.Va. 53, 365 S.E.2d 251 (1986).' Syl. pt. 1, Brammer v. Human Rights Commission, 183 W.Va. 108, 394 S.E.2d 340 (1990)." Syllabus Point 10, Hanlon v. Chambers, 195 W.Va. 99, 464 S.E.2d 741 (1995).

Id. at 366-67, 480 S.E.2d at 805-06 (emphasis supplied).